UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

HEIDI JACOBS,                                  )
                                               )
                   Plaintiff,                  )
                                               )
         vs.                                   )         Case No. 4:22-cv-01204-AGF
                                               )
MERCY HEALTH,                                  )
                                               )
                   Defendant.                  )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Mercy Health's motion for summary judgment with respect to Plaintiff Heidi Jacobs' claims of religious discrimination under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000(e), and disability discrimination under the Americans with Disabilities Act Amendments Act ("ADA"), 42 U.S.C. §§ 12101-12213, as amended.  ECF No. 40.  The motion is fully briefed and ready for disposition.[1]  For the reasons set forth below, the Court will grant Defendant's motion for summary judgment on both claims.

## BACKGROUND

Viewing the evidence and all reasonable inferences in the light most favorable to Plaintiff for the purpose of summary judgment, the record establishes the following.

---

[1]      The Court has also considered Defendant's supplemental briefing filed on February 14, 2024, which highlighted a recent decision in the Eastern District, *Conway v. Mercy Hospital St. Louis*, No. 4:22-CV-1113 RLW, 2024 WL 551892 (E.D. Mo. Feb. 12, 2024), that is relevant to the issues in this case.  ECF No. 47.

On February 12, 2022, Plaintiff Heidi Jacobs applied for the "V Acute Nurse" position at Mercy's Virtual Care Center.  The Virtual Care Center was operated by Defendant Mercy Health.  On February 22, 2022, Mercy Health extended an employment offer to Plaintiff for the position of "V Acute Nurse" at Mercy's Virtual Care Clinic, provided that she complied with Mercy Health's vaccination policies.  During the COVID-19 pandemic and national emergency, Mercy Health instituted a COVID-19 Vaccination Policy, requiring all Mercy Health employees to receive a COVID-19 vaccine in addition to an influenza vaccine.  ECF No. 41-38, Mercy COVID-19 Vaccination Policy; ECF No. 41-41, Mercy Offer of Employment.  Mercy Health provided exemptions for individuals with sincerely held religious beliefs that conflict with the vaccination requirement and for individuals with certain recognized medical contraindications to the vaccines.  Plaintiff sought both religious and medical exemptions for the influenza vaccine and the COVID-19 vaccine.  ECF No. 43.

**<u>Religious Exemption</u>**

Plaintiff sought a religious exemption for both vaccines because she identifies as a "non-denominational Christian."  ECF No. 43 at ¶ 27; ECF No. 45 at 2.  Plaintiff explained: "I believe that my God-given immunity is flawless.  I trust God over anything man-made, created, and I believe [the vaccination] interferes with . . . God's divine providence."  ECF No. 41-39, Pl.'s Dep., 82:16-22; *see also* ECF No. 41-53, Religious Exemption Request for COVID.

Mercy Health denied Plaintiff's religious exemption requests for the COVID-19 vaccine and the influenza vaccine, explaining that, "[Plaintiff] has not identified any

religious belief or tenet that would be violated if she received the vaccine."  ECF No. 41-46, Religious Exemption Denial Reasons; ECF No. 43 at ¶ 41.

**Medical Exemption**

Plaintiff also submitted medical exemption requests for both vaccines based on a suspected diagnosis of Guillain-Barré Syndrome ("GBS").  Specifically, Plaintiff claimed that she suffered an adverse reaction after receiving an influenza vaccine in 2019.  She alleged she experienced body weakness, difficulty breathing, and negative impacts on the nervous system of her upper body after receiving the influenza vaccine, but admits that the reaction was temporary and resolved without medical intervention, that she did not have a "severe allergic reaction," and she did not suffer any permanent issues or disability.  ECF No. 1; ECF No. 43 at ¶¶ 49-51.

When seeking her medical exemption request in February 2022, Plaintiff reported these 2019 symptoms to her medical provider, Dr. Henningsen, via an electronic messaging system.  ECF No. 43-4, at 2.  Plaintiff said she had "genuine concerns that this [2019 vaccine reaction] may have been a mild case of Guillain Barre" and was "concerned that repeated exposures to vaccinations could lead to a serious full-blown reaction."  *Id*.  In response, Dr. Henningsen said she was happy to fill out the exemption forms "as Guillain-Barre is a very high potential/risk for you."  *Id.* at 1.  The subsequent exemption form completed by Dr. Henningsen, simply stated that Plaintiff should not receive the COVID-19 vaccine because of a "hx of guillain-barre after immunization."  ECF No. 41-54.  However, Plaintiff did not receive treatment for these symptoms from Dr. Henningsen, who was not her physician in 2019, nor from any other healthcare

provider.  Plaintiff was never officially diagnosed with GBS, nor is there any other

documentation suggesting that Plaintiff has GBS or had an adverse vaccine reaction,

other than the electronic exchange with Dr. Henningsen related to Plaintiff's exemption

request.  Plaintiff admits that did not suffer from permanent issues or disabilities because

of her reaction to influenza vaccine in 2019.  ECF. No. 43 at ¶¶ 44-51.

Mercy Health denied Plaintiff's medical exemption for the COVID-19 vaccine

because the Centers for Disease Control ("CDC") does not recognize GBS as a

contraindication to receiving the COVID-19 vaccine.  Mercy Health did, however, grant

Plaintiff's medical exemption for the influenza vaccine based on Plaintiff's alleged

history of GBS, a condition which has been formally recognized as a contraindication to

the influenza vaccine.  Because Plaintiff refused to receive the COVID-19 vaccine and

did not have an approved exemption, Mercy Health rescinded its offer of employment for

Plaintiff's failure to comply with employment policies.

Following the recission of her employment offer, Plaintiff brought claims against

Mercy for religious discrimination under Title VII of the Civil Rights Act of 1964 and

disability discrimination under the Americans with Disabilities Act Amendments Act

("ADA").  Defendant has moved for summary judgment on both claims.

## **ARGUMENTS OF THE PARTIES**

## **Title VII Religious Discrimination Claims (Count II)**

In Count II of her Complaint, Plaintiff asserts that Defendant engaged in unlawful

employment practices in violation of Title VII by: (1) failing to accommodate Plaintiff's

religious exemption request to receiving the COVID-19 and influenza vaccinations and

(2) rescinding its employment offer to Plaintiff because of her religious beliefs.  ECF No. 1.

In moving for summary judgment, Defendant asserts that its undisputed status as a religious organization exempts Mercy Health from claims of religious discrimination and retaliation under Title VII.  Furthermore, Defendant argues that, regardless of Mercy Health's status as a religious organization, Plaintiff's beliefs do not qualify as religious, but rather are personal in nature, and thus not subject to Title VII protection.  ECF No. 42.

In opposition, Plaintiff "does not dispute" that Mercy Health is a religious organization such that it may be eligible for an exemption under Title VII, 42 U.S.C. § 2000e-1(a).  ECF No. 44 at 9.  Rather, Plaintiff argues that Mercy Health is not entitled to the religious organization exemption in this case because Mercy did not revoke her job offer due to disparate religious statements.  Plaintiff also argues that her beliefs are religious in nature, and the issues of whether such beliefs are sincerely held is a factual issue for the jury.  ECF No. 44.

### ADA Disability Discrimination Claims (Count I)

In Count I of her Complaint, Plaintiff asserts that Defendant (1) engaged in disability discrimination in violation of the ADA by failing to accommodate her disability, and (2) took adverse employment actions against Plaintiff because of her disability by rescinding its offer of employment.  ECF No. 1.  Plaintiff claims that she "is disabled in that she has an underlying condition that impairs her nervous system and

respiratory systems" (suspected GBS), and that her "disabilities inhibit major life activities including breathing."  ECF No. 1 at ¶¶ 13,35.

In moving for summary judgment, Defendant argues that: (1) Plaintiff failed to meet her burden of showing she is "disabled"; (2) the requested accommodation for the COVID-19 vaccination was not causally related to her purported disability; and (3) Defendant did not withdraw its employment offer to Plaintiff because of her alleged disability.  ECF No. 42.

In opposition, Plaintiff claims that she is disabled under the ADA because she has a record of GBS.  Plaintiff argues that GBS is a "disease that substantially limits the operations of the body's immune system and peripheral nervous system which are major body functions" and "therefore substantially limits a major life activity."  ECF. No. 44 at 11.  She also argues that her condition is episodic or in remission.

Additionally, Plaintiff argues that there is a genuine dispute of material fact as to whether the CDC recognizes GBS as a contraindication to the COVID-19 vaccine, which is critical to determining whether Mercy Health failed to accommodate Plaintiff.  Lastly, with respect to her claim of discriminatory discharge, Plaintiff argues that Mercy Health's decision to withdraw its employment offer was "directly and causally related to its refusal to grant Plaintiff's accommodation request," and therefore it cannot be said that "such [action] was not discriminatory."  ECF No. 44 at 12-13.

## DISCUSSION

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that provides that summary

judgment shall be granted "if the movant shows that there is no genuine issue as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (citing to Federal

Rule of Civil Procedure 56(a)).  "'Where the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting

*Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).  When considering the evidence, the

Court "make[s] all reasonable inferences in the light most favorable to the nonmoving

party."  *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 406 (8th Cir. 2018) (reviewing a

summary judgment determination in the context of the ADA) (citations omitted); *see also

Saeemodarae v. Mercy Health Servs.*, 456 F. Supp. 2d 1021, 1033 (N.D. Iowa 2006)

(setting forth the standards for determining whether a genuine issue of material fact exists

regarding claims of religious discrimination under Title VII).

To avoid summary judgment, the nonmovant has the "burden of presenting

evidence sufficiently supporting the disputed material facts that a reasonable jury could

return a verdict in their favor."  *Gregory v. City of Rogers, Ark.*, 974 F.2d 1006, 1010 (8th

Cir. 1992) (citation omitted).  The nonmovant may not "simply point to allegations" in

the complaint, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or

"rest on the hope of discrediting the movant's evidence at trial."  *In re Citizens Loan &*

*Sav. Co.*, 621 F.2d 911, 913 (8th Cir. 1980).  Rather, the plaintiff "must identify and provide evidence of specific facts creating a triable controversy."  *Howard*, 363 F.3d at 800 (citation omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

**<u>Title VII Religious Discrimination Claim (Count II)</u>**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or discriminate against any individual . . . because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a).  To "minimize governmental interference with the decision-making process in religions," Congress amended Title VII to exempt a qualifying "religious organization" from claims of religious discrimination "with respect to the employment of individuals of a particular religion to perform work connected with the carrying on" by such organization.  42 U.S.C. § 2000e-1(a); *Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 336 (1987) (explaining the history of Title VII's amendments and exemptions).  Once an entity is determined to be a "religious organization," courts do not inquire into the organization's justifications behind its employment decisions.  *Hernandez v. Comm'r of Internal Revenue,* 490 U.S. 680, 699 (1989) (explaining "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretation of those creeds.").

**Mercy Health's Religious Status**

Title VII does not define what constitutes a "religious entity," so courts look to a "variety of factors when analyzing whether an employer falls within the scope of the 2000e-1(a) exemption." *Conway v. Mercy Hosp. St. Louis,* No. 4:22-CV-1113 RLW, 2024 WL 551892, at *3 (E.D. Mo. Feb. 12, 2024) (quoting *Boydston v. Mercy Hosp. Ardmore, Inc*., No. CIV-18-444-G, 2020 WL 1448112, at *4 (W.D. Okla. Mar. 25, 2020)).  Because the Eighth Circuit has yet to establish guidelines to determine whether an entity is a religious organization, *see Conway*, 2024 WL 551892, at *4, this district and several others have relied on the Third Circuit's approach in *LeBoon v. Lancaster Jewish Community Center Association*, 503 F.3d 217, 226 (3d Cir. 2007).  *See Boydston*, 2020 WL 1448112, at *4; *Scaffidi v. New Orleans Mission, Inc.,* 612 F. Supp. 3d 630, 636 (E.D. La. 2020) (relying on *LeBoon* factors in absence of Fifth Circuit guidance); *Braun v. St. Pius X Parish,* 827 F. Supp. 2d 1312, 1317 (N.D. Okla. 2011) (emphasizing that both parties referenced *LeBoon* factors in disputing whether the employer was a religious organization).

The Third Circuit in *LeBoon* presented nine factors as relevant to determine whether an employer is a religious organization and therefore protected under Title VII's exemption:

> (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees,

(6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.

503 F.3d at 226 (citations omitted); *Conway*, 2024 WL 551892, at *4 (citing *LeBoon* factors).

The relevance and weight of these factors depend on the circumstances of the particular case.  *LeBoon,* 503 F.3d at 227; *Conway*, 2024 WL 551892, at *4 (noting the Third Circuit's case-by-case analysis directive).  Like this district's recent decision in *Conway,* and aligned with several other districts, the Court will apply the *LeBoon* framework in determining whether Mercy Health qualifies as a religious organization under Title VII.

Several district courts, including in this district, have already found other subsidiaries and entities within the Mercy Health Network to be religious organizations exempt from claims of Title VII religious discrimination and retaliation.  Recently, in *Conway*, the court, applying the *LeBoon* factors, found that Defendant Mercy Hospital St. Louis—a wholly-owned subsidiary of Mercy Health—was a religious entity subject to exemption of Title VII religious discrimination claims.  2024 WL 551892, at *4-5; *see Burlison v. Mercy Hosp. S.,* No. 4:22-cv-01017-SEP, 2023 WL 4560796, at *3 (E.D. Mo. July 17, 2023) (granting defendant Mercy Hospital South's motion to dismiss; stating "courts have routinely found that Mercy Hospital entities qualify for the religious-organization exemption from Title VII"; collecting cases); *Boydston*, 2020 WL 1448112, at *6 (granting summary judgment for a Mercy Health affiliate because it is a religious

organization exempt from Title VII religious discrimination claims); *Jenkins v. Mercy Hosp. Rogers,* No. 5:19-CV-05221, 2020 WL 1271371, at *2 (W.D. Ark. Mar. 17, 2020) (describing Mercy as the "sort of entity described in the religious organization exemption from Title VII"); *Young v. St. John's Mercy Health Sys.,* No. 4:10-CV-824-TIA, 2011 WL 9155, at *5 (E.D. Mo. Jan. 3, 2011) (finding that Mercy Health entities fell within the MHRA's exemptions for corporations owned and operated by religious groups); *Saeemodarae,* 456 F. Supp. 2d at 1037 (finding no genuine issue of material fact that Mercy is "unequivocally religious.").

In light of the record before this Court, and the aforementioned case law, the Court concludes that Mercy Health is a religious organization and Title VII's 2000e-1(a) religious organization exemption applies.[2]

Applying the *LeBoon* framework upon which this district relied in *Conway* and *Burlison,* the record clearly establishes that Defendant is a religious organization. Regarding the first *LeBoon* factor, it is undisputed that Defendant Mercy Health is a nonprofit healthcare provider and is listed on the Official Catholic Directory, meaning that it is operated and controlled by the Catholic Church and is considered tax exempt by the IRS.  ECF No. 43 at ¶¶ 10-11.

As to the second factor, "the provision of a secular service such as medical treatment is not, alone, determinative of whether the entity qualifies for a religious

---

[2]     Notably, the Plaintiff does not dispute that Mercy Health is a religious organization, she only contests whether the exemption applies to her claims.  *See* ECF No. 44 at 9.  Regardless, the Court has analyzed the record under the *LeBoon* factors and determined that Defendant is indeed a religious organization under Title VII.

exemption." *Conway*, 2024 WL 551892, at *5 (citing *Saeemodarae*, 456 F. Supp. 2d at 1038 ("[I]t is not necessary that the activities of the organization be 'religious' activities for either the organization or the activities to be exempt.")).  Here, it is undisputed that Defendant's health care services are rendered to "embody the mission of health ministry of Jesus in the Roman Catholic Church through the management, ownership or sponsorship of health care services and the offering of programs and services consistent with the teaching and laws of the Roman Catholic Church and the ethos and charism of the Sisters of Mercy."  ECF No. 43 at ¶ 7.  Thus, even though Defendant's activities are secular, such activities are clearly motivated by religious purpose and in accordance with religious doctrine.  *See Boydston*, 2020 WL 1448112, at *5 ("Treatment of the sick through medical science and technology is an action that may be motivated by a religious purpose and reflect religious character."); *Conway*, 2024 WL 551892, at *5 (finding that the second factor was less relevant because Mercy's secular medical service was "overshadowed by Defendant's readily apparent religious purpose and character.").

Regarding the third and fourth factors, it is undisputed that under its Articles of Incorporation, Mercy Health endeavors to "continue the healing acts of Jesus Christ in accordance with the doctrines and tenets of the Catholic Church."  ECF No. 43 at ¶ 16. Mercy Health's Bylaws state that it operates to "carry forward the healing ministry of Jesus in the Church through the management, ownership, or sponsorship of healthcare facilities, programs and services consistent with the teachings and laws of the Church regarding Catholic health services and with the traditions, values, and concerns of the Sisters of Mercy . . . ."  *Id*. at ¶ 18.  Further, it is undisputed that Mercy Health received

funding from the Catholic Church (*id.* at ¶ 13) and is operated and controlled by the Catholic Church.  *Id.* at ¶ 10.

As to the fifth factor, it is undisputed that Defendant is a wholly owned subsidiary of Mercy Health Ministries, a public juridic personality of the Roman Catholic Church with four Catholic nuns on its Board of Directors.  *Id.* at ¶¶ 1, 14.  As such, Mercy Health must provide regular reports to the Vatican that demonstrate its Catholic identity and culture in the workplace.  *Id.* at ¶ 9.  Defendant is also accountable to the Vatican Dicastery of the Congregation for the Institutes of Consecrated Life and Societies of Apostolic Life.  *Id.* at ¶ 14.

Regarding the sixth, seventh, and eighth factors, it is undisputed that Mercy Health receives funding from the Catholic Church, adorns its facilities with religious imagery, and provides daily prayers in accordance with its Catholic teachings.  *Id.* at ¶¶ 13, 19, 20.  Mercy Health provides training to new Mercy employees about Mercy Health's status as a "ministry of the Catholic Church," its Catholic heritage, and its obligation to practice medicine consistent with the Ethical and Religious Directives for Catholic Health Care Services, promulgated by the United States Conference of Bishops.  *See id.* at ¶ 21.

No argument or evidence has been set forth regarding the ninth factor—whether membership is made up of coreligionists.  Regardless, this factor is not alone determinative given the entity's "overwhelming religious context."  *See Saeemodarae*, 456 F. Supp. 2d at 1038; *see also Conway*, 2024 WL 551892, at * 5 (according little weight to the ninth factor in light of Mercy's "readily apparent religious affiliation, purpose and character.").

13

Taken together, these factors readily establish Mercy Health as a religious entity within the meaning of Title VII's exemption. Title VII's exemption shields Mercy Health from religious discrimination claims, including claims arising from disputes over vaccination requirements. *See Conway*, 2024 WL 551892; *Burlison*, 2023 WL 4560796.

**Applicability of the Exemption to Plaintiff's Claims**

Plaintiff "does not dispute that Mercy Health is a religious organization that may be entitled to [Title VII's] exemption." ECF No. 44 at 9. However, Plaintiff argues that the exemption does not apply here because Mercy "did not revoke the job offer to Plaintiff because she was a member of a particular religion." *Id.* This contention, that she was not fired because of her religion, seemingly undermines her religious discrimination claim.

That aside, without any citation to legal authority, Plaintiff goes on to argue the exemption only applies when the stated beliefs of the employer are contrary to the religious beliefs of the employee. The religious exemption is not so narrowly construed. The exemption does not require, nor even permit, the Court to dissect the employer's religious doctrine to determine whether the employee's belief is truly adverse to the stated religious doctrine. *See Saeemodarare,* 456 F. Supp. 2d at 1040 (noting that the religious institution is not required to demonstrate any "causal relationship" between a specific religious policy and the employee's termination from her "secular" position to invoke the exemption); *see also Hernandez*, 490 U.S. at 699 ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.").

The religious organization exemption under Title VII applies broadly and extends to both *nonsecular* and *secular* activities of religious organizations.  *See Amos*, 483 U.S. at 336 (applying the exemption to the secular, nonprofit activities of religious organizations).  In *LeBoon,* for example, the Third Circuit concluded that a religious organization "need not enforce an across-the-board policy of hiring only coreligionists" to qualify for Title VII's protection.  503 F.3d at 230.  In *Kennedy v. St. Joseph's Ministries, Inc.,* the Fourth Circuit emphasized that a religious organization need not base an adverse employment decision exclusively upon an employee's adherence to a different religious entity to invoke Title VII's exemption.  657 F.3d 189, 194 (4th Cir. 2011).  And in *Killinger v. Samford University,* the Eleventh Circuit stated that there existed "no requirement that a religious . . . institution engage in a strict policy of religious discrimination—such as always preferring Baptists in employment decisions—to be entitled to the exemption."  113 F.3d 196, 199-200 (11th Cir. 1997).  Thus, the applicability of Title VII's exemption is not contingent upon a showing that the employee failed to practice the specific ideologies of the religious organization nor a statement by the religious organization that expressly identifies the religious beliefs in contention.  *See, e.g., id.; Petruska v. Gannon Univ.*, 462 F.3d 294, 307-08 (3d. Cir. 2006).  The religious organization exemption defense is only precluded against claims of discrimination based on race, color, national origin, and sex.  *See Amos,* 483 U.S. at 336; *Kennedy,* 657 F.3d at 192.  Accordingly, Plaintiff's argument that the exemption does not apply to her claims of religious discrimination is meritless.

In sum, there is no genuine dispute of material fact that Mercy Health is a religious organization engaged in healthcare as part of its mission, entitled to the application of Title VII's religious organization exemption.  Thus, the Court need not determine whether Plaintiff's beliefs are sincerely held and religious in nature, to determine that Plaintiff's religious discrimination claim fails as a matter of law.  Accordingly, the Court grants Defendant's motion for summary judgment related to Plaintiff's Title VII discrimination claims.

## ADA Discrimination Claim (Count I)

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a); *see also Morriss v. BNSF Ry. Co.,* 817 F.3d 1104, 1107 (8th Cir. 2016).  A "qualified individual" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

To assert a claim for disability discrimination under the ADA, the plaintiff bears the burden to show (1) she has a disability within the meaning of the ADA; (2) she was qualified to perform the essential functions of her job; and (3) she suffered adverse employment action due to her qualifying disability.  42 U.S.C. § 12112, *et seq.*; *see also Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 684 (8th Cir. 2003); *Morriss*, 817 F.3d at 1107.

**Plaintiff's Disability**

As a threshold matter, Plaintiff must "produce sufficient evidence to demonstrate [she] has a disability within the meaning of the ADA." *Hustvet,* 910 F.3d at 410 (citation omitted). A person is disabled and therefore eligible for an accommodation if she has "a physical or mental impairment that substantially limits one or more of the major life activities" ("actual disability" prong); "has a record of such an impairment" ("record of" prong); or is "regarded as having such an impairment" ("regarded as" prong). 29 C.F.R. § 1630.2(g)(1)(i)-(iii); *see also Hustvet*, 910 F.3d at 410 (quoting EEOC's regulations). A "physical impairment" means "any physiological disorder or condition . . . affecting one or more body systems," including "neurological, musculoskeletal, . . . respiratory (including speech organs) . . . , immune, [and] circulatory" systems. 29 C.F.R. § 1630.2(h)(1); *Wood*, 339 F.3d at 684. Conditions that are episodic or in remission may qualify if they "would substantially limit a major life activity *when active*." 29 C.F.R. § 1630.2(j)(1)(vii) (emphasis added).

An impairment that "substantially limits" is construed broadly, however, not every impairment constitutes a disability within the meaning of the ADA. 29 C.F.R. § 1630.2(j)(1)(ii); *see Morriss,* 817 F.3d at 1111 (describing Congress' expansion of the definition of "substantially limits"). A qualifying condition is one that " substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping,

walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(I)(1)(i); *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1088 (8th Cir. 2001).

Here, Plaintiff alleges that she has a "record of" GBS and that her condition is episodic or in remission, but the record does not support either of these contentions.

<u>Record of Disability</u>

Claimants may demonstrate a qualifying condition by providing evidence documenting their medical histories, but "unsupported self-serving allegations" are insufficient, standing alone.  *See Meeks v. Stevens*, No. 1:11-CV-0026 HEA, 2013 WL 308821, at *3 (E.D. Mo. Jan. 25, 2013) (granting summary judgment for defendant where plaintiff "failed to offer any medical evidence that he is a disabled individual under the ADA" and "only offered unsupported self-serving allegations"  which he failed to substantiate with "sufficient probative evidence that would permit a finding in his favor."); *see Parris v. McDonald*, No. 4:14-CV-1808-CEJ, 2016 WL 2894701 at *5 (E.D. Mo. May 18, 2016) (granting summary judgment for the employer because the plaintiff failed to offer medical evidence to "explain the relevant details of her disability and establish a legitimate need for an accommodation."); *see Jennings v. AAON,* No. 14-CV-0347-CVE-PJC, 2015 WL 3465834, at *6 (N.D. Okla. June 1, 2015) (explaining that plaintiff's self-diagnosis that "she has a mold allergy is . . . not an acceptable substitute for medical evidence or the testimony of a medical expert" to demonstrate a disability under the ADA.)

Furthermore, a plaintiff must establish that the condition qualified as a disability at the time the adverse employment determination occurred, even if they assert the condition is episodic or in remission.  *See* 29 C.F.R. 1630.2(j)(1)(vii).  In *Dalton v. Manor Care of West Des Moines IA, LLC,*  the court noted that, while a formal medical diagnosis usually points in favor of a showing of a "disability," testimony from the plaintiff's treating physician that she "*could* have had fibromyalgia" during the employment period in question was insufficient to establish that the plaintiff actually had a disability, despite her formal diagnosis several years after the employment period in dispute.  No. 4:12-CV-00172-JEG, 2013 WL 11311236, at \*18 (S.D. Iowa Nov. 13, 2013), *aff'd*, 782 F.3d 955 (8th Cir. 2015); *see also Jones v. Walker,* No. 4:21-cv-00149-JM-ERE, 2023 WL 2520711, at \*4 (E.D. Ark. Feb. 21, 2023) (finding that the plaintiff was not disabled under the ADA because his temporary hip impairment "was successfully resolved") *R. & R. adopted*, 2023 WL 2499944 (E.D. Ark. Mar. 14, 2023).

Here, Plaintiff has failed to demonstrate that she has a "record of" GBS under the ADA.  29 C.F.R. § 1630.2(g)(1)(ii).  Plaintiff admits that her condition of suspected GBS does not impair any major life activity.  ECF No. 43 at ¶ 46; ECF No. 43-39, Pl.'s Dep. at 133:9-14.  Plaintiff also admits that she has never been formally diagnosed with GBS, has never sought medical treatment for symptoms of GBS, and has never been comprehensively evaluated for GBS.  ECF No. 43 at ¶ 45.  Although Dr. Henningsen noted a "hx of guillain-barre after immunization" on Plaintiff's medical exemption request form, this was based solely off of Plaintiff's self-reported symptoms and self-diagnosis.  ECF Nos. 43-5, 43-15.  Dr. Henningsen has never evaluated Plaintiff for GBS,

19

treated Plaintiff for GBS, or formally diagnosed Plaintiff with GBS.  ECF No. 43, at ¶¶

44-45; ECF No. 41-39, Pl.'s Dep. at 119:13-120:23.  Further, Plaintiff did not seek any

evaluation or treatment for her alleged adverse reaction to the vaccine in 2019, she only

sought the opinion of Dr. Henningsen regarding these symptoms, three years later, when

she was seeking the medical exemption in 2022.  Additionally, Dr. Henningsen's

comment in her electronic correspondence with Plaintiff that she was happy to fill out the

exemption forms because "Guillain-Barre is a very high potential/risk" for Plaintiff was

based solely on Plaintiff's self-reported symptoms and "suspicion" that she has GBS.  *Id.*

at 119:13-121:9.  One record noting a "*high potential*" or "*risk*" for a disability based

solely on Plaintiff's self-reported reaction from a vaccine three years prior is insufficient

to demonstrate that Plaintiff has GBS or was otherwise actually disabled.  *See Dalton*,

2013 WL 11311236, at *18; *Hustvet,* 910 F.3d at 410-11; *Meeks*, 2013 WL 308821, at

*3; *Richardson v. Grays Harbor Cnty. Pub. Hosp., Dist. No. 1,* No. C20-5814-RAJ-TLF,

2021 WL 9649848, at *4-5 (W.D. Wash. Oct. 20, 2021); *Jennings*, 2015 WL 3465834, at

*6.

<u>Vaccine Reactions</u>

Plaintiff alleges that her disability is "episodic" and is specifically triggered by

vaccines.  But courts have held that an unsubstantiated or limited history of reactions and

allergies to a vaccine is insufficient to demonstrate a disability under the ADA.  In

*Hustvet,* the Eighth Circuit concluded that the plaintiff's "chemical sensitivities and

allergies" that a vaccine might exacerbate did not constitute a disability sufficient to

require her employer to grant her vaccination exemption accommodation request.  910

F.3d at 411.  The court noted that the plaintiff had never sought medical attention when she experienced a chemical sensitivity, had never been hospitalized because of a reaction, and never had to leave work because of a reaction.  *Id.*  Those facts were "not enough for a reasonable fact-finder to conclude she is disabled."  *Id.*  Thus, the employer's denial of the plaintiff's medical exemption request for the measles, mumps, and rubella vaccines did not constitute discrimination under the ADA.  *Id.*  In *Richardson,* the Western District of Washington concluded that the plaintiff's own memory of having a severe allergic reaction or temporary intolerance to the influenza vaccine did not constitute an episodic or remissive condition that substantially impaired a major life activity.  2021 WL 9649848, at *4-5.

To be clear, it is "[d]oubtless [that] some reactions to vaccines can be severe enough in intensity, duration, frequency, or after-effects to rise to the level of a disability," but Plaintiff admitted that her adverse reaction symptoms were temporary and did not require any medical intervention.  *See Norman v. NYU Langone Health Sys.,* 492 F. Supp. 3d 154, 165 (S.D.N.Y. 2020), *aff'd*, No. 20-3624-CV (L), 2021 WL 5986999 (2d Cir. Dec. 17, 2021).  Courts have refused to classify even severe reactions to vaccines as disabilities in certain circumstances, let alone the kind of reaction Plaintiff reports.  *See, e.g., Richardson,* 2021 WL 9649848, at *4-5 (rejecting the plaintiff's recollection of a severe allergic reaction to the influenza vaccine as a disability); *Eubanks v. Mercy Med. Ctr., Inc.,* No. CV WDQ-15-513, 2015 WL 9255326, at *6 (D. Md. Dec. 17, 2015) (pointing to the absence of any information about how the plaintiff's allergies and

physician's recommendation to forgo the flu vaccine substantially limited a major life activity).

Here, Plaintiff admits that her symptoms were temporary and resolved without medical intervention; she did not suffer from any permanent issues or disabilities because of 2019 influenza vaccine; she has received other vaccinations in the past without issue; and she has no known allergy to the COVID-19 vaccine.  Doc. No. 43 at ¶¶ 47, 49-52. Thus, like *Hustvet* and *Richardson*, the Court finds that Plaintiff's self-reported claim of an one-time adverse reaction to the influenza vaccine does not constitute an episodic or remissive condition that substantially impaired a major life activity, or otherwise constitutes a disability under the ADA.

In sum, Plaintiff cannot demonstrate that she has a qualifying disability under the ADA.[3]  Even making all reasonable inferences in the light most favorable to Plaintiff, on

---

[3]     Plaintiff does not argue that she has a disability under the "actual disability" or "regarded as" prong.  Nevertheless, she has also failed to demonstrate a disability under these prongs.  The "actual disability" prong requires Plaintiff to demonstrate that she has "a physical or mental impairment that substantially limits one or more of the major life activities."  29 C.F.R. § 1630.2(g)(1)(i).  But here, Plaintiff *admits* that her condition of suspected GBS does not impair any major life activity.  ECF No. 43 at ¶ 46; ECF No. 43-39, Pl.'s Dep. at 133:9-14.  Further, even if the Court were to consider the argument that Mercy "regarded" Plaintiff as having GBS, given that they granted her a medical exemption for the flu vaccine, an offer of accommodation does not, by itself, establish that an employer regards an employee as disabled within the meaning of the ADA.  *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 776 n.20 (3d Cir. 2004), *superseded by statute on other grounds as stated in*, *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 187-189 n.30 (3d Cir. 2019); *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 938 (6th Cir. 2000).  Additionally, the "regarded as" prong does not include impairments that are "transitory" (lasting six months or less) and "minor".  20 C.F.R. 1630.2(g)(1)(iii).  And here, Plaintiff admits that her reaction to the vaccine was temporary and resolved without any medical intervention or treatment, thus it was both transitory and minor.

this record, there is simply not enough for a reasonable fact-finder to conclude she is disabled.

**Reasonable Accommodation**

Even if Plaintiff could establish that she was disabled under the ADA, her claim still fails because Plaintiff has not met her burden of showing that "the requested accommodation [here, a medical exemption from the COVID-19 vaccine] is reasonable." *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004) (quotations omitted).  "[A]n accommodation is reasonable only if it is related to the accommodated individual's disability."  *Allen v. Interior Constr. Servs. Ltd.*, 214 F.3d 978, 982 (8th Cir. 2000).  The Eighth Circuit has explained, "[w]here the reasonable accommodation requested is unrelated to the limitation, we do not believe an ADA action may lie.  Put another way, there must be a causal connection between the major life activity that is limited and the accommodation sought."  *Wood*, 339 F.3d at 687.

Here, Defendant argues that because there is no contraindication between the COVID-19 vaccine and GBS, there is no causal connection between the accommodation sought and her alleged disability.  Indeed, in vaccine exemption cases, courts look to whether the Center for Disease Control (CDC) has recognized the alleged disability as a contraindication of the relevant vaccine when determining whether the requested accommodation is reasonable.  *See Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 434 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022) (explaining that "where the claimed disability is not a contraindication for the vaccine, the requested accommodation does not sufficiently relate to the claimed disability."); *Hustvet*, 910 F.3d

at 411 (finding that "the accommodation [plaintiff] sought did not sufficiently relate to her purported disability" because "the CDC does not consider past seizures [alleged disability] to be a contraindication or even a precaution for the vaccine."); *see also Biden v. Missouri,* 595 U.S. 87 (2022) (upholding a regulation that required staff members to present documentation "confirming *recognized* clinical contraindications to COVID-19 vaccines" when requesting a medical exemption from vaccination).

Here, the parties do not dispute that the CDC's recognized vaccine contraindications are indicative of whether an accommodation request is reasonably related to the alleged disability.   ECF No. 44 at 12; ECF No. 46 at 9.  However, Plaintiff argues that there is a genuine dispute of material fact as to whether GBS is a recognized contraindication to the COVID-19 vaccine.  "To show a genuine dispute of material fact, a party must provide more than conjecture and speculation.  Rather the nonmovant has an affirmative burden to designate specific facts creating a triable controversy." *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) (internal quotations and citations omitted).   Here, Plaintiff has not presented "evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in [her] favor." *Gregory,* 974 F.2d at 1010.

The CDC does not recognize GBS as a clinical contraindication to the COVID-19 vaccine. *See* ECF No. 41-48, CDC Contraindications for COVID Vaccine; ECF No. 41-49, Dr. Keith Starke Dep., at 63:23-64:8.  Plaintiff argues that this is a disputed material fact because there are "findings published by the CDC which indicated studies have found evidence suggesting an increased risk of Guillain-Barré Syndrome after COVID-19

vaccination."  ECF No. 44 at 12.  In support of this contention, Plaintiff provides two documents: (1) a CDC webpage entitled "Guillain-Barré Syndrome and Vaccines" (ECF No. 43-5), and (2) an abstract of a research study conducted in Taiwan entitled "Guillain-Barré Syndrome Associated with COVID-19 Vaccination."  ECF No. 43-6.  Upon review, neither publication concludes or in any way indicates that GBS is a contraindication or potential contraindication of the COVID-19 Vaccine.

The research abstract was only researching the ChAdOxi-S (Oxford/AstraZeneca), a COVID-19 vaccine available in Taiwan and specifically explained that while the study "can indicate safety issues and outline clinical features of diseases . . . they *cannot establish a robust causal relationship between COVID-19 vaccination and GBS*."  *Id.* at 3 (emphasis added).  The research abstract does not state that GBS is a contraindication of the COVID-19 vaccine, nor does it in any way suggest that those with GBS should not get the COVID-19 vaccine.  Rather it recommends increased monitoring after vaccination and explains that additional research is required.  *See id.*

The CDC webpage provided by Plaintiff notes that there has been some evidence "suggesting" an increased risk of GBS among adults after receiving the J&J/Janssen COVID-19, but not after receiving the Pfizer-BioNTech or Moderna COVID-19.  ECF No. 43-5 at 2.  The webpage does not state or otherwise indicate the CDC is recognizing a contraindication or even a precaution.  Notably, Mercy was not requiring that Plaintiff take the J&J/Janssen vaccine, indeed Mercy only recommended and offered the Pfizer and Moderna vaccines.  In sum, the documents provided by Plaintiff establish that there is some research indicating an increased risk of GBS after *certain* COVID-19 vaccines,

but they do not create an issue of fact as to whether GBS is a contraindication of the COVID-19 vaccine at issue.  *See Hustvet*, 910 F.3d at 411 (noting that the "very small, but possible risk, of having a seizure" associated with the plaintiff's claimed disability did not constitute a contraindication or even a precaution for the vaccine).

In sum, it is undisputed that the CDC does not recognize GBS as a contraindication of the COVID-19 vaccine, thus Plaintiff's requested accommodation (vaccine exemption) is not sufficiently related to her purported disability of GBS.  *See Together Emps.*, 573 F. Supp. 3d at 434; *Hustvet*, 910 F.3d at 411.

Regardless, as discussed above, Plaintiff has failed to demonstrate that she is disabled under the ADA.  Thus, her claims of disability discrimination fail as a matter of law.  Defendant Mercy Health is therefore also entitled to summary judgment on Count I.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **GRANTED**.  ECF No. 40.

All claims against all parties having been resolved, a separate Judgment will accompany this Memorandum and Order.


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE


Dated this 1st day of March, 2024.

26